UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OLIVE MAY SMITH,

    Plaintiff,

- against -

NEW YORK ENTERPRISE AMERICA,
INC., SW MANAGEMENT, INC., and
26 W. 27 REALTY, LLC,

    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7 21 08

**OPINION AND ORDER**

06 Civ. 3082 (PKL)

## Appearances

TABAK, MELLUSI & SHISHA
Stephen B. Roberts, Esq.
29 Broadway
New York, NY 10006

Attorney for Plaintiff

WEINER, MILLO & MORGAN
Douglas A. Gingold, Esq.
220 Fifth Avenue, 10th Floor
New York, NY 10001

Attorney for Defendant New York Enterprise America, Inc.

GARTNER BLOOM & GREIPER, P.C.
Arthur P. Xanthos, Esq.
885 Second Avenue, 26th Floor
New York, NY 10017

Attorney for Defendants SW Management, Inc. and
26 W. 27 REALTY, LLC

**LEISURE, District Judge:**

Plaintiff Olive May Smith ("Smith") brings this personal-injury action after falling on the steps outside a building located at 26 West 27th Street, New York, New York. She seeks damages from three defendants -- the building's owner, 26 W. 27 Realty, LLC ("26 W. 27"), the building's operator, S.W. Management, Inc. ("S.W. Management"), and the ground-floor tenant of the building, New York Enterprise America, Inc. ("NYEA"). Smith contends that defendants negligently caused her fall by creating and maintaining a dangerous and defective condition on the premises. 26 W. 27 and S.W. Management (collectively, the "Owners") move the Court for summary judgment against Smith. Separately, NYEA moves for summary judgment against Smith, and also for summary judgment with respect to the Owners' cross-claims for common-law contribution, common-law indemnification, and contractual indemnification. For the reasons set forth below, defendants' motions for summary judgment against Smith are DENIED and NYEA's motion for summary judgment against the Owners is GRANTED IN PART and DENIED IN PART.

## Background

NYEA is a wholesale hat and accessory store in New York, New York. (NYEA's Memo. of Law, Ex. C at 6-7.) At all times relevant to this action, it leased space on the ground floor of

1

a building located at 26 West 27th Street. (Id., Ex. C at 7; NYEA's 56.1 ¶ 2; Owners' 56.1 ¶¶ 5-6.) The building is owned by 26 W. 27 and managed by S.W. Management. (Owners' 56.1 ¶¶ 1, 3.)

Smith is a resident of Bermuda, where she is a partner in a business called Dub City Variety Limited, a clothing store, record store, and grocery store. (NYEA's Memo. of Law, Ex. B at 4-5, 7, 93.) In December 2004, Smith traveled to New York with her boyfriend and business partner, Kent Outerbridge ("Outerbridge"), to buy merchandise for the store. (Id., Ex. B at 5, 7, 18-19.) In the afternoon of December 19, 2004, Smith and Outerbridge visited NYEA. (NYEA's 56.1 ¶ 1; Owners' 56.1 ¶ 9; Smith Decl. at 1.) Smith, who had shopped at NYEA before, (Owners' 56.1 ¶ 8; Pl.'s Opp. to Owners' 56.1 ¶ 8; NYEA's Memo. of Law, Ex. B at 22), entered the store without incident and proceeded to purchase $131 worth of hats and ponchos. (NYEA's Memo. of Law, Ex. B at 21.)

As Smith was leaving the store, she carried a bag of cookies over her left arm, while Outerbridge was behind her carrying a bag of the items they had purchased. (Id., Ex. B at 22, 35, 37.) It was approximately 3:00 p.m. and there was no snow on the ground. (Id., Ex. B at 19, 104.) In order to exit, Smith opened the glass door by pushing on an inside bar, on which several scarves were decoratively draped. (Id., Ex. B at 33-35; NYEA's 56.1 ¶ 7, Ex. F.) According to Smith:

> These items obscured the view of the steps
> looking out towards the sidewalk.  In
> addition, there was no warning sign on the
> inside of the store which was observable
> . . . .  I opened the door and attempted to
> place my foot down.  Immediately my foot
> dropped down since there was no landing in
> front of the door.

(Smith Decl. at 1-2.)  Smith attempted to hold onto the door to

maintain her balance, but instead lost control as the scarves

slid across the interior bar.  (Id. at 2; NYEA's Memo. of Law,

Ex. B at 36-37)  Consequently, Smith fell from the top of four

steps down to the sidewalk.  (NYEA's Memo. of Law, Ex. B at 36;

NYEA's 56.1 ¶ 7, Ex. F.)  Outerbridge, who witnessed her fall,

(NYEA's Memo. of Law, Ex. B at 37), confirms Smith's

recollection of the event:

> I observed Olive May Smith attempt to keep
> from falling by holding on to the bar that
> was across the door . . . [H]er hand was
> placed over the merchandise which completely
> covered the bar and her hand slid along the
> bar causing her to fall further down and
> eventually tumble down the steps to the
> sidewalk.

(Outerbridge Decl. at 2.)  Outerbridge thereafter called a

taxicab, which took him and Smith to St. Vincent's Hospital.

(NYEA's Memo. of Law, Ex. B at 46-47.)  Smith was not admitted

to the hospital, but x-rays revealed a torn left-quadriceps

muscle, which ultimately required surgery in Bermuda.  (Id., Ex.

B at 49-50, 52-53, 55.)

On April 21, 2006, Smith filed a complaint against 26 W. 27, S.W. Management, and NYEA, seeking damages for defendants' negligence in creating and maintaining a dangerous and defective condition on their premises. Following the completion of discovery, defendants have moved for summary judgment. Smith maintains that there remain genuine issues of material fact. Specifically, Smith contends that the steps outside NYEA are dangerous because "[t]he topmost step is located directly under the door," with no "landing or platform" to step onto upon exiting the store. (Pl.'s Memos. of Law at 2.) Further, there was no handrail on either side of the steps. (NYEA's Memo. of Law, Ex. G at 25.) In support of her opposition to summary judgment, Smith provides the declaration of Edwin H. Brunjes, a registered architect licensed in New York with over forty years of experience in the field. (Brunjes Decl. at 1.) After inspecting the steps, Mr. Brunjes opined that "the entranceway of the building to the store did not comply with the applicable building code. The code required a platform or landing at least three feet in width to be placed in front of the door leading to the steps. Such a landing would prevent a person from opening a door to an immediate drop . . . ." (Id. at 3.) According to Smith, this dangerous condition was aggravated by factors inside the store, namely the lack of a warning sign[1] and NYEA's

---

[1] Though there is a warning sign -- "WATCH YOUR STEP" -- on the bottom of the

4

merchandise hanging from the door's interior bar, which obscured her view of the steps from inside the store, (NYEA's Memo. of Law, Ex. B at 47), and prevented Smith from holding onto the bar upon losing her balance. (Smith Decl. at 2; NYEA's Memo. of Law, Ex. B at 36-37.)

Defendants, on the other hand, uniformly contend that Smith's claim fails because she does not know what caused her fall. (Owners' 56.1 ¶ 12; NYEA's 56.1 ¶ 8.) In their respective motions for summary judgment, defendants heavily rely on the following questions and answers from Smith's deposition:

> Q    Did you trip on the step, did you slip on the step, what happened?
>
> A    The door came open further.
>
> Q    At the time of the accident did you slip?
>
> A    I don't say it was a slip.
>
> Q    So, no, you didn't slip. Did you trip?
>
> A    (No response)
>
> Q    You tell us, how did the accident happen?
>
> A    I got up and stood up and I was pushing the door open by the bar. Then I started to put my right foot down and the scarves across the door, my hand came across like that and I fell (indicating).

(NYEA's Memo. of Law, Ex. B at 33-34.)

---

door facing outside the store, there does not appear to be a similar sign facing inside the store. (NYEA's Memo. of Law, Ex. F.) Moreover, Smith claims that the sign facing outside, to the extent it would have been visible from inside the store, was blocked by the merchandise hanging on the inside bar.

>       Q       Do you know what caused you to fall?
>
>       A       No.

(Id., Ex. B at 103-04.) Owners further allege that they had no
notice of any defect or dangerous condition on their premises.[2]
(Owners' 56.1 ¶¶ 14-15; see also Owners' Not. of Mot., Ex. E at
44-45.) Smith, claiming that defendants had constructive notice
of the condition, states that a "Certificate of Occupancy was
issued in 1950 so the condition was there for over 50 years."
(Pl.'s Opp. to Owners' 56.1 ¶ 14 (citing Roberts Aff., Ex. 1).)
Additionally, S.W. Management's superintendent of the premises
had worked at the building for two-and-a-half years prior to
Smith's fall. (Owners' Not. of Mot., Ex. E at 6.)

     In addition to Smith's inability to prove defendants'
notice and causation, NYEA argues that it owed no duty of care
to Smith because maintenance of the steps at issue was the
responsibility of 26 W. 27. In Paragraph 4 of the lease between
26 W. 27 and NYEA, entitled "Repairs," 26 W. 27 agreed to
"maintain and repair the public portions of the building, both
exterior and interior . . . ." (Id., Ex. D.) The Court now
turns to defendants' motions.

---

[2] NYEA also alludes to this argument in its preliminary statement of facts:

>   There were never any prior complaints regarding the subject
>   stairs, the door or the scarves hanging on of [sic] the
>   door, and there was never any repairs made to the premises
>   by the landlord or managing agent following the subject
>   accident.

(NYEA's Memo. of Law at 3.)

6

## Discussion

### I.  Summary Judgment Standard

District courts are directed to issue summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 367-68 (2d Cir. 2003) (stating that a court may grant summary judgment "'only if it can be established that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'") (quoting Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co., 303 F.3d 419, 423 (2d Cir. 2002)).  Of course, "'the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Opals on Ice Lingerie, 320 F.3d at 368 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986)).  "A dispute is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" N.Y. Stock Exch., Inc. v. New York, N.Y. Hotel, LLC, 293 F.3d 550, 554 (2d Cir. 2002) (quoting Anderson, 477 U.S. at 248).  The relevant substantive

law will identify the facts that are material for the purposes of summary judgment.[3] Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, a district court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975) (Kaufman, C.J.) (citing Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); accord LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995) ("'The inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'") (quoting Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994)); Patrick v. LeFevre, 745 F.2d 153, 158 (2d Cir. 1984). If there exists "any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is

---

[3] The Court will apply New York substantive law because this case arises under diversity jurisdiction, 28 U.S.C. § 1332(a)(1). See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 71-80 (1938). And where, as here, the parties' briefs rely solely upon New York law, choice of law is established by implied consent. See Krumme v. Westpoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000).

improper." Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996). Finally, "[t]hough courts are hesitant to grant summary judgment in negligence cases, 'the mere fact that a case involves a claim of negligence does not preclude a granting of summary judgment.'" Hood v. Regency Mar. Corp., No. 99 Civ. 10250, 2000 U.S. Dist. LEXIS 17298, at *4-5 (S.D.N.Y. Nov. 30, 2000) (quoting Cummiskey v. Chandris, S.A., 719 F. Supp. 1183, 1186 (S.D.N.Y. 1989)); see Ortiz v. Rosner, 817 F. Supp. 348, 350 (S.D.N.Y. 1993) (Leisure, J.) ("Summary judgment is difficult to obtain in negligence actions because whether conduct is 'negligent' is a factual determination in all but the most extreme situations.").

## II. Negligence

To establish a *prima facie* case of negligence under New York Law, a plaintiff must prove that: (1) defendant owed a duty to plaintiff; (2) defendant breached its duty to plaintiff; and (3) defendant's breach was the proximate cause of plaintiff's injury. See Williams v. Utica Coll. Of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006) (quoting Stagl v. Delta Airlines, Inc., 52 F.3d 463, 467 (2d Cir. 1995)). In premises-liability actions, "[t]he essential elements of a negligence claim . . . are that the landowner controls the property, that a defect exists, and that the defect causes plaintiffs' injuries."

McHale v. Westcott, 893 F. Supp. 143, 147 (N.D.N.Y. 1995)
(Pooler, J.).

With respect to the first element, "landowners and business
proprietors have a duty to maintain their properties in
reasonably safe condition." Di Ponzio v. Riordan, 89 N.Y.2d 578,
582, 679 N.E.2d 616, 618 (N.Y. 1997); see Turrisi v. Ponderosa
Inc., 179 A.D.2d 956, 957, 578 N.Y.S.2d 724, 726 (3d Dep't 1992)
("[L]iability for a dangerous or defective condition on property
is generally predicated upon ownership, occupancy, control or
special use of the property. The existence of one or more of
these elements is sufficient to give rise to a duty to exercise
reasonable care."). NYEA argues that it did not owe Smith any
duty of care with respect to the stairs because the Owners
agreed to "maintain and repair the public portions of the
building, both exterior and interior . . . ." (NYEA's Memo. of
Law, Ex. D.) While this provision is sufficient to establish
NYEA's lack of control of the stairway, see, e.g., Fraher v.
JNPJC Brusco Assocs., 286 A.D.2d 289, 289, 729 N.Y.S.2d 140, 140
(1st Dep't 2001) (finding that commercial tenant owed no duty to
plaintiff who fell on a greasy exterior stairway because tenant
was not responsible for the stairway under provisions of the
lease), it does not wholly absolve NYEA of its duty of care to
Smith. In addition to control, the existence of defendant's
duty may be predicated upon "some indication that the tenant

10

created the dangerous condition . . . ." Kozak v. Broadway
Joe's, 296 A.D.2d 683, 684, 745 N.Y.S.2d 139, 141 (3d Dep't
2002) (internal quotations removed); see Fraher, 286 A.D.2d at
289, 729 N.Y.S.2d at 140 (allowing plaintiff "to replead based
on factual references in the papers that could give rise to a
cause of action charging defendant with creation of the
condition"). Here, Smith alleges that conditions inside of the
store, such as NYEA's merchandise hanging from the door's
interior bar and the lack of a warning sign, created the
dangerous condition and contributed to her fall. These facts,
viewed in the light most favorable to plaintiff, are sufficient
to overcome NYEA's contention that it owed no duty to Smith.[4] See
Koullias v. Farm, 8 Misc.3d 598, 599-600, 798 N.Y.S.2d 877, 878-
79 (Sup. Ct. Kings County 2005) (finding that out-of-possession
landlords could be liable for negligence where they placed
opaque plastic curtains in front of cellar doors, thereby
obstructing the view and creating a trap door).

Next, "[a]ttendant with the defect element is the issue of
notice to defendants." McHale, 893 F. Supp. at 148.
Specifically, a landowner must have actual or constructive
notice of the defective condition in order to be found liable

---

[4] Because NYEA created the condition, it also follows that Smith establishes
the second element of her negligence claim -- notice of the defect. See Keyes
v. Am. Airlines, Inc., No. CV-00-4480, 2006 U.S. Dist. LEXIS 86532, at *22-23
(E.D.N.Y. Nov. 30, 2006) (stating that defendant has notice of a condition
where it creates the condition). The third element, proximate causation, is
discussed below.

11

for negligence. See Taylor v. United States, 121 F.3d 86, 89-90 (2d Cir. 1997) (McLaughlin, J.) (citing Gordon v. Am. Museum of Natural History, 67 N.Y.2d 836, 838, 492 N.E.2d 774, 775 (N.Y. 1986)); Manning v. Tracy J's, Inc., No. 06 Civ. 956, 2008 U.S. Dist. LEXIS 31914, at *15 (S.D.N.Y. Apr. 17, 2008) ("To prove a *prima facie* case of negligence in a slip-and-fall case, the plaintiff must show . . . that the defendant had actual or constructive notice of the condition.") (internal citations omitted); Southard v. Eight Ball, Inc., No. 96 Civ. 5542, 1997 U.S. Dist. LEXIS 9907, at *8-9 (S.D.N.Y. July 11, 1997). Smith ostensibly argues that NYEA had actual notice of the defect on the steps, stating that "[t]he fact that a warning sign existed shows that the store owner knew of the presence of a danger." (Pl.'s Memos. of Law at 8.) Actual notice may be found where defendant "created the condition or received reports of it such that he has actual knowledge of the defect's existence." McHale, 893 F. Supp. at 148; see Pianforini v. Kelties Bum Steer, 258 A.D.2d 634, 635, 685 N.Y.S.2d 804, 805 (2d Dep't 1999). Notwithstanding the warning sign on the outside of the door,[5] there is no evidence in the record unambiguously showing that NYEA was made aware of the defective stairs. Smith admits that

---

[5] The parties do not indicate, and it is unclear from the record, who put the warning sign on the door. This ambiguity is inconsequential because defendants otherwise had notice of the dangerous condition and defect. Indeed, NYEA was responsible for placing merchandise on the inside of the door and, as discussed below, the Owners had constructive notice of the defective steps.

she never notified any of the defendants about a defective condition, (Pl.'s Opp. to Owners' 56.1 ¶ 13), and no other testimony elicited or evidence produced during discovery points to defendants having received any report or complaint about the steps. And even if NYEA had received notice, it did not owe a duty of care to Smith related to maintenance of the steps. See Fraher, 286 A.D.2d at 289, 729 N.Y.S.2d at 140; see also Perez v. City of New York, 18 A.D.3d 358, 358, 796 N.Y.S.2d 47, 48 (1st Dep't 2005) (granting summary judgment in favor of defendant who, pursuant to a lease agreement, had no duty to maintain the area where the accident occurred).

The constructive-notice inquiry, on the other hand, focuses on the defect, namely whether it is visible and apparent and whether it existed for an ample amount of time to permit detection by defendant. See Taylor, 121 F.3d at 90 (quoting Gordon, 67 N.Y.2d at 837, 492 N.E.2d at 775); Manning, 2008 U.S. Dist. LEXIS 31914, at *16. As a threshold matter, despite the lack of any foreign objects or hazardous materials characteristically present in slip-and-fall negligence cases, Smith's evidence of a structural defect in the stairs is sufficient to raise a genuine issue of material fact. According to Edwin Brunjes, a registered architect, "the entranceway in this matter violated the building code and was improper and unsafe . . . ." (Brunjes Decl. at 3.) See McHale, 893 F. Supp.

at 148 (finding engineering expert's opinion that the stairs were defective "to raise an issue of fact regarding the existence of a longstanding structural defect").

The burden is then on the defendant to demonstrate a lack of constructive notice of this defective condition. See Ascher v. Target Corp., 522 F. Supp. 2d 452, 462 (E.D.N.Y. 2007). Here, the Owners contend that "[i]t is uncontested that [they] never had notice of any defect or dangerous condition within or about the Store or Building." (Owners' Memo. of Law at 2.) This conclusory assertion ignores the Owners' constructive notice, which Smith does contest. The Owners plainly had ample time to discover the alleged defect in the stairs. The building at 26 W. 27th Street was built in 1925,[6] (Xanthos Reply Aff. ¶ 6, Ex. A), and there is no evidence that the stairs have since been modified in any way. See McHale, 893 F. Supp. at 149 (assuming, where the stairs at issue were forty-years old, "that the defect was sufficiently longstanding to give defendants an opportunity to correct it"). Moreover, there is an issue of fact as to

---

[6] The parties dispute the exact age of the building, which is purportedly "relevant to the extent it may affect whether a particular building code provision applies." (Xanthos Reply Aff. ¶ 5.) Regardless of the applicable provision, conformity to or violation of the Building Code is merely evidence of negligence and is not dispositive of summary judgment in this action. See Elliott v. City of New York, 95 N.Y.2d 730, 734-36, 747 N.E.2d 760, 762-63 (N.Y. 2001) (finding that violations of ordinances or administrative rules and regulations constitute evidence of negligence); Romanowski v. Yahr, 5 A.D.3d 985, 986, 773 N.Y.S.2d 922, 923 (4th Dep't 2004) ("It is for a jury to decide whether defendants violated the Building Code and, if so, whether that violation proximately caused plaintiff's accident."). As such, the Court need not determine the applicable Building Code provision at this juncture.

14

whether the structural defect was visible and apparent. In so holding, it is worth contrasting the defect present here to the defect in McHale v. Westcott. In that case, then-District Judge Pooler found that defendants, who conducted annual inspections of the stairs at issue and never received any complaints about the stairs, had no way of knowing "that the stairs' riser heights varied by more than one-eighth of an inch and that this variance constituted a structural defect." Id. Notably, Judge Pooler distinguished the case before her from a New York Court of Appeals opinion which attributed defendant landowner with constructive notice of a driveway pothole that was "'plainly visible,'" Id. (quoting Putnam v. Stout, 38 N.Y.2d 607, 612, 345 N.E.2d 319, 322 (N.Y. 1976)), determining that, "[i]n this case, the only way defendants could have discovered the defect was by undertaking a structural analysis. . . ." Id. Unlike McHale, in the instant action, a jury could reasonably find that the Owners had notice of the "plainly visible" defective stairs without the need for any structural analysis. See Griffin v. Sadauskas, 14 A.D.3d 930, 930-31, 787 N.Y.S.2d 721, 722 (3d Dep't 2005) ("We have previously held that it is a matter of simple logic whether a door swinging over steps may create a hazardous and unsafe condition and that determination should be for the finder of fact . . . .") (interal quotation marks and citations omitted); Burton v. New York, 90 A.D.2d 585, 586, 456 N.Y.S.2d 126, 127

15

(3d Dep't 1982) ("The uncontroverted expert proof is that it has always been considered to be a violation of acceptable engineering principles of good building design and construction, and hazardous and unsafe to have a door swing outward and over stairs."). Accordingly, the Owners have failed to carry their burden in proving lack of constructive notice.

Finally, Smith must show that defendants' alleged breaches -- the Owners' failure to maintain and repair the defective steps and the various conditions present inside of NYEA's store -- caused her injury. "Proximate cause is a classic jury question." Southard, 1997 U.S. Dist. LEXIS 9907, at *14. Nevertheless, plaintiff's inability to identify the cause of her injury, or mere speculation as to the cause, is inadequate to survive summary judgment. See Williams v. KFC Nat'l Mgmt. Co., 391 F.3d 411, 421 (2d Cir. 2004); Ascher, 522 F. Supp. 2d at 456-57 (granting defendant summary judgment where plaintiff could not identify the cause of her accident with any specificity). In that light, "'[i]f the circumstantial evidence presented lends itself equally to several conflicting inferences, the trier of fact is not permitted to select the inference it prefers, since to do so would be the equivalent of engaging in pure speculation about the facts.'" Wurtzel v. Starbucks Coffee Co., 257 F. Supp. 2d 520, 527 (E.D.N.Y. 2003) (quoting Mehra v. Bentz, 529 F.2d 1137, 1139-40 (2d Cir. 1975));

16

see also DeRosa v. City of New York, 30 A.D.3d 323, 325-26, 817 N.Y.S.2d 282, 285 (1st Dep't 2006) (holding that the "proof must permit a finding of proximate cause 'based not upon speculation, but upon the logical inferences to be drawn from the evidence'") (quoting Schneider v. Kings Highway Hosp. Ctr., Inc., 67 N.Y.2d 743, 744, 490 N.E.2d 1221, 1221 (N.Y. 1986)).

Defendants maintain that they are entitled to summary judgment largely based upon the following deposition testimony by Smith:

> Q  Do you know what caused you to fall?
> A  No.

(NYEA's Memo. of Law, Ex. B at 103-04; see NYEA's Memo. of Law at 7 ("It is clear that plaintiff in no way identified the cause of her fall.").) Viewed in isolation, this question and answer support defendants' position that no logical inference can be drawn by a jury "where plaintiff does not know what step she was on when she feel [sic], or whether she tripped or slipped." (Owners' Memo. of Law at 5.) See Rodriguez v. Cafaro, 17 A.D.3d 658, 658, 794 N.Y.S.2d 113, 114 (2d Dep't 2005). The record, however, belies the incomplete picture painted by the defendants. Looking beyond Smith's and Outerbridge's declarations, which defendants believe to be self-serving, it is clear that Smith is not claiming that an object caused her to trip or slip, but rather that she had a misstep when the door

17

opened past the top step. (NYEA's Memo. of Law, Ex. B at 33,
36.) Further, Smith need not prove at summary judgment the
exact step on which she fell or the exact condition of the step.
See McHale, 893 F. Supp. at 150. Instead, it is up to a jury to
decide at trial whether Smith's injury was the natural and
probable consequence of the steps' defect. See id.; Palmer v.
165 E. 72nd Apartment Corp., 32 A.D.3d 382, 382, 819 N.Y.S.2d
105, 106 (2d Dep't 2006) (affirming the denial of summary
judgment where, even if a misstep caused plaintiff's fall, an
issue of fact remained as to whether the lack of handrails was a
proximate cause of plaintiff's injury). Additionally, Smith
alleges that conditions inside of the store contributed to her
injury. (See, e.g., NYEA's Memo. of Law, Ex. B at 47.) A jury
should also decide whether such conditions proximately caused
Smith's injury. See Griffin, 14 A.D.3d at 931, 787 N.Y.S.2d at
722 ("[I]t would not be pure speculation for a jury to find that
the alleged configuration of the door and stairs were a cause of
decedent's fall."); Koullias, 8 Misc.3d at 600, 798 N.Y.S.2d at
879 (deeming it a jury issue whether defendant "can be
chargeable with negligence for failing to foresee the potential
for danger in the configuration of a curtain and a trap door
that is in frequent use by delivery people."). For example,
NYEA argues that "[p]hotographs showing the scarves hanging from
the door prove that they would not prevent one exiting the store

18

from seeing the outside." (NYEA's Memo. of Law at 8, Ex. F.) It
is not for the Court, however, to decide this question of fact,
but for the jury. The jury will then be able to draw logical
inferences from the evidence presented, and the Court foresees
no potential for sheer speculation and conjecture. Therefore,
defendants' motions for summary judgment against Smith are
denied.

III. Indemnification and Contribution

The Owners' three cross-claims against NYEA sound in
common-law indemnification, contractual indemnification, and
common-law contribution. (Owners' Ans. & Cross-Compl. ¶¶ 12-14.)
NYEA moves for summary judgment to dismiss these cross-claims,
though it admits that the Owners "are only entitled to
contractual indemnification in the event [NYEA] is negligent."[7]
(NYEA's Reply Memo. of Law at 6.) Further, NYEA states that the
Owners' claim for contribution must be dismissed because "the

---

[7] Paragraph 8 of the lease between NYEA and 26 W. 27 states, in part:

> Owner or its agents shall not be liable . . . for any
> injury or damage to persons or property resulting from any
> cause of whatsoever nature, unless caused by or due to the
> negligence of Owner, its agents, servants or employees
> . . . . Tenant shall indemnify and save harmless Owner
> against and from all liabilities, obligations, damages,
> penalties, claims, costs and expenses for which Owner shall
> not be reimbursed by insurance, including attorneys fees,
> paid, suffered or incurred as a result of . . . the
> carelessness, negligence or improper conduct of the Tenant,
> Tenant's agent, contractors, employees, invitees or
> licensees.

(NYEA's Memo. of Law, Ex. D.)

evidence fails to demonstrate that [NYEA] created the condition or had actual or constructive notice of it." (Id. at 7.) Having already found a genuine issue of material fact regarding NYEA's negligence, the Owners' cross-claims for contractual indemnification and contribution will not be dismissed. The Court need only address NYEA's motion for summary judgment to dismiss the Owners' cross-claim for common-law, or implied, indemnification.

Implied indemnity "is a restitution concept which results in a shifting of the loss 'because to fail to do so would result in the unjust enrichment of one party at the expense of the other.'" Facilities Dev. Corp. v. Miletta, 180 A.D.2d 97, 104, 584 N.Y.S. 2d 491, 495 (3d Dep't 1992) (quoting Mas v. Two Bridges Assoc., 75 N.Y.2d 680, 690, 554 N.E.2d 1257, 1262 (1990)). Unlike with contribution, which creates a right of apportionment of liability among joint tortfeasors, see Trs. Of Columbia Univ. v. Mitchell/Giurgola Assocs., 109 A.D.2d 449, 454, 492 N.Y.S.2d 371, 375-76 (1st Dep't 1985), "a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit" of implied indemnification. Id. at 453, 492 N.Y.S.2d at 375; see Tereshchenko v. Lynn, 36 A.D.3d 684, 686, 828 N.Y.S.2d 185, 187 (2d Dep't 2007) (finding common-law indemnification unavailable to defendant whose liability to plaintiff would be as a joint tortfeasor); Keshavarz v. Murphy,

242 A.D.2d 680, 681, 662 N.Y.S.2d 795, 796 (2d Dep't 1997). It
follows that if a jury finds that the Owners breached their duty
of care to Smith, implied indemnification would not be
available.[8]  Alternatively, if a jury finds that the Owners
exercised due care, the Owners will be free from liability,
thereby obviating the need for recovery from NYEA. See Trs. Of
Columbia Univ., 109 A.D.2d at 454, 492 N.Y.S.2d at 375.
Accordingly, the Owners' cross-claim for common-law
indemnification is dismissed.  The Owners still have at their
disposal both contractual indemnification and contribution.

---

[8] Owners have not delegated responsibility for the duties which Smith claims
were breached, which would be grounds for their implied-indemnification claim
to proceed to trial. See 17 Vista Fee Assocs. v. Teachers Ins. & Annuity
Ass'n of Am., 259 A.D.2d 75, 80, 693 N.Y.S.2d 554, 558 (1st Dep't 1999)
("[T]o be entitled to indemnification, the [building] owner . . . seeking
indemnity must have delegated exclusive responsibility for the duties giving
rise to the loss to the party from whom indemnification is sought.")

## Conclusion

For the foregoing reasons, the defendants' motions for summary judgment against Smith are DENIED. NYEA's motion for summary judgment with respect to the Owners' cross-claims is GRANTED as to common-law indemnification and DENIED as to contractual indemnification and contribution. The parties are ORDERED to appear before this Court at 500 Pearl Street, Courtroom 18B for a status conference on August 27, 2008 at 10:30 a.m.

**SO ORDERED.**

**New York, New York**

July $21$ , 2008

_Shira A. Scheindlin_

U.S.D.J.